**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECUNDINO GARCIA PICHARDO, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*          Case No.:

                    Plaintiffs,          **CLASS AND COLLECTIVE**
                                         **ACTION COMPLAINT**

        v.                               **Jury Trial Demanded**

BOSTON POST FOOD CORP.
        d/b/a C-TOWN,
and RAMON VARGAS,

                    Defendants.

---

Plaintiff SECUNDINO GARCIA PICHARDO ("Plaintiff PICHARDO"), on behalf of

himself and others similarly situated, by and through his undersigned attorneys, hereby files this

Class and Collective Action Complaint against Defendants, BOSTON POST FOOD CORP. d/b/a

C-TOWN, and RAMON VARGAS ("Defendants"), and state as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff alleges pursuant to Fair Labor Standards Act, as amended, 29 U.S.C. §§

201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants:

(1) unpaid overtime premiums; (2) unpaid wages, including overtime, due to time shaving; (3)

liquidated damages; and (4) attorney's fees and costs.

2.     Plaintiff further alleges pursuant to New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages overtime premiums; (2) unpaid wages, including overtime, due to time shaving; (3) unpaid spread of hours premiums; (4) unpaid call-in pay; (5) liquidated damages; (6) statutory penalties; and (7) attorney's fees and costs.

3.     Plaintiff additionally alleges that, pursuant to the Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.     Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also allege that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

5.     Plaintiff PICHARDO further alleges that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq,* when they would not allow Plaintiff to go to physical therapy sessions for an ankle injury that worsened as a result Plaintiff not being able to go to the physical therapy sessions. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this controversy, pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

7.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint took place in this District and because Defendants' principal place of business is in this District.

## PARTIES

8.     Plaintiff SECUNDINO GARCIA PICHARDO is a resident of Bronx County.

9.     Defendants operate a C-Town supermarket in New York City, located 4008 Boston Road, The Bronx, NY 10475.

10.     Corporate Defendant BOSTON POST FOOD CORP. d/b/a C-TOWN is a domestic business corporation organized under the laws of New York, with a principal place of business and service of process address located at 4008 Boston Road, The Bronx, NY 10475.

11.     At all relevant times, Defendants were Plaintiff's employers within the meaning of FLSA and NYLL and the Regulations thereunder.

12.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.     Plaintiff brings claims for relief as a collective action against Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to cashiers, stock persons, counter employees, baggers, and department workers among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein ("FLSA Collective Plaintiffs").

14.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures,

protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, including as a result of Defendants' policy of time shaving. There is also a sub-collective of employees who were paid in cash ("Cash FLSA Collective Plaintiffs") that have a claim for unpaid wages, including overtime, due to Defendants compensating them for overtime hours at their straight time rate, instead of 1.5 times their regular hourly rates. Plaintiff is a member of both the collective and the sub-collective.

15.     The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs. The claims for relief are properly brought under and maintained as an opt-in collective action, pursuant to Section 16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

16.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to cashiers, stock persons, counter employees, baggers, and department workers among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Member are also determined from Defendants'

records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

18.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class. Moreover, there is also a sub-class of employees who were paid in cash ("Cash Subclass") who also number more than 40. Plaintiff is a member of both the Class and the Cash Subclass.

19.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions. All the Class Members were subject to Defendants' corporate practices of: (i) failing to pay overtime premiums; (ii) failing to pay wages, including overtime, due to time shaving; (iii) failing to pay proper wages, including overtime, due to time shaving of short-breaks; (iv) failing to pay spread of hours premium; (iv) failing to pay call-in pay; (v) failing to provide wage notices to Class Members, at date of hiring and dates of all wage changes; and (vi) failing to provide Class Members with wage statements with every payment of wages, pursuant to NYLL. With regard to Plaintiff and the Cash Subclass, Defendants also failed to pay them the proper overtime wages because Defendants compensated them for overtime hours at their straight time rate, instead of 1.5 times their regular hourly rates, in violation of the NYLL.

20.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class Member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23.    Defendants and other employers throughout the country violate NYLL and applicable state laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a)   Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

c)   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class Members for their work;

d)   Whether Defendant properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e)   Whether Defendants properly compensated Plaintiff and Class Members the proper overtime compensation at one-and-one-half times their straight time

base hourly rates for all hours worked in excess of forty (40) each workweek under the NYLL;

f) Whether Defendants failed to pay Plaintiff and the Class Members all wages owed, including overtime, due to a policy of time shaving;

g) Whether Defendants paid Plaintiff and Class Members the New York State "spread of hours" premium when their workdays exceeded ten hours;

h) Whether Defendants failed to compensate Plaintiff and Class Members for breaks lasting 20 minutes or less; in violation of NYLL;

i) Whether Defendants failed to pay Plaintiff and Class Members call-in pay, as required under NYLL;

j) Whether Defendants provided wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of NYLL; and

k) Whether Defendants provided wage statements for each pay period to Plaintiff and Class Members, in accordance with NYLL.

## **STATEMENT OF FACTS**

### *Plaintiff's Wage and Hour Claims*

25. In or around September 18, 2016, Plaintiff PICHARDO was hired by Defendants to work as a deli person for Defendants' C-Town supermarket, located at 4008 Boston Road, The Bronx, NY 10475. Plaintiff PICHARDO's employment with Defendants terminated in or around June 22, 2022.

26. Throughout Plaintiff PICHARDO's employment with Defendants, he was scheduled to work six (6) days per week, Mondays through Saturdays, from 7:00 a.m. to 3:00 p.m.

for a total of forty-eight (48) hours per week. Additionally, for two and a half months in 2019, Plaintiff PICHARDO was scheduled to work six (6) day per week, from 7:00 a.m. to 10:00 p.m. for a total of ninety (90) hours per week. FLSA Collective Plaintiffs and Class Members worked similar hours.

27.     Throughout Plaintiff PICHARDO's employment with Defendants, he was paid New York City minimum wage at a straight rate. At all times, Plaintiff PICHARDO was paid weekly in cash. FLSA Collective Plaintiffs and Class Members were paid at similar rates at a straight rate by cash every week.

28.     At all relevant times, Plaintiff was time shaved by Defendants because he engaged in substantial off-the-clock work. At the end of the day, Plaintiff would be instructed by their managers to clock out. However, Plaintiff would continue to work an additional thirty (30) minutes every day. FLSA Collective Plaintiffs, and Class Members were similarly engaged in unpaid off-the-clock work.

29.     Plaintiff was further time shaved by Defendants as he were subjected to a thirty (30) minute meal break deduction every day. Plaintiff could not take full meal breaks as Defendants were always busy and required Plaintiff to perform work while he were supposed to be on break. Despite not taking the full break, Plaintiff was always deducted thirty (30) minutes from his wages. FLSA Collective Plaintiffs, and Class Members also suffered similarly from Defendants' illegal time shaving policy because they were not paid for all hours worked, including for meal breaks that were not fully taken.

30.     Additionally, at various times during, Plaintiff would clock out for short breaks that lasted less than 20-minutes. However, he were not compensated for this time even though it is compensable work time under the FLSA and the NYLL. FLSA Collective Plaintiffs and Class

members were similarly not paid for these short rest breaks. The extent of the damages due to this violation can be calculated directly from Defendant's records for Plaintiff, FLSA Collective Plaintiffs, and Class members.

31.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime premium rate of one-and-half times of their regular hourly rate for each hour exceeding forty (40) hours per workweek including due to time shaving, in violation of the FLSA and the NYLL.

32.     At all relevant times, Plaintiff and Class Members worked days that exceeded ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff and Class Members the spread of hours premium for workdays that exceeded ten (10) hours in length.

33.     During his employment, at various times, Plaintiff were sent home by Defendants within the first few hours of his shifts. However, Defendants never paid Plaintiff call-in pay for such shifts, but instead only paid him for the on-the-clock hours. Class Members were similarly not paid call-in pay when sent home after working shifts that lasted 4 hours or less.

34.     During his employment, Plaintiff would be paid off the books in cash. Plaintiff, Cash FLSA Collective Plaintiffs and Cash Subclass Members also suffered similarly from being paid cash off the books.

35.     As a result of Defendants' paying Plaintiff, Cash FLSA Collective Plaintiffs, and Cash Subclass Members in cash, Defendants failed to provide Plaintiff, Cash FLSA Collective Plaintiffs, and Cash Subclass Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, FLSA Collective Plaintiffs, and Cash Subclass Members. In failing to account for these

monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least five thousand dollars to Plaintiff, Cash FLSA Collective Plaintiffs, and Cash Subclass Members for each fraudulent filing, which would have to be at least once a year.

36.     In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Cash Subclass Members to pay the employer's share of Social Security and Medicare taxes for each employee.

37.     Defendants also unjustly enriched themselves at the expense of Plaintiff, Cash FLSA Collective Plaintiffs, and Cash Subclass Members by retaining monies that should have been remitted to the IRS on Plaintiff's, Cash FLSA Collective Plaintiffs, and Cash Subclass Members' behalf.

38.     As a result, Plaintiff, Cash FLSA Collective Plaintiffs, and Cash Subclass Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

39.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff, Cash FLSA Collective Plaintiffs, and each Cash Subclass member 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

40.     Even if Defendants could show that they paid some employees a part of their wages in check and filed the appropriate W-2s for those checks, Defendants would remain liable to those employees for failing to pay FICA taxes on the cash portion of their wages.

41.     Throughout his employment, Plaintiff has not been provided with any wage notices, from Defendants. Class members were similarly not provided with wage notices from Defendants.

42.     Plaintiff was not provided with proper wage statements from Defendants because the wage statements failed to: (1) account for all of his hours worked, and (2) accurately reflect proper pay rates. Class members were similarly not provided with proper statements.

43.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

44.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured

Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

45.     Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total number of hours Plaintiff and Class members worked and their corresponding pay rates, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked, or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked overtime. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

46.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and New York Class members to struggle to pay bills and other debts.

47.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

48.     The direct effect of failing to state the number of hours an employee worked and the corresponding proper pay rate is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is

$130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

49.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

50.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar.

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

51.     Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours and pay rates been reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the omission prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

52.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

53.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and New York Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

54.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

55.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

56.     Here, the problem is not merely challenging but insurmountable. Plaintiff and New York Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and New York Class members. The problem, rather, is that Plaintiff and New York Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

57.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked, including overtime, due to Defendants' policy of time shaving.

58.     Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate thereof for hours worked over forty (40) in a workweek, including due to Defendants' time shaving policy, in violation of the FLSA or NYLL.

59.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and Class Members, in violation of the NYLL.

60.     Defendants knowingly and willfully operated their business with a policy of not providing wage notices to employees, at the beginning of employment and on dates of all wage changes thereafter, pursuant to the requirements of NYLL.

61.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under NYLL.

*__Plaintiff's FMLA Claims__*

62.     In or around December 2020, Plaintiff PICHARDO injured his ankle. Plaintiff PICHARDO did not work and was on bed rest until in or around March 2021. In or around March 2021 Plaintiff PICHARDO got approval from his doctor to work on the condition that he regularly attend physical therapy sessions and returned to work.

63.     Upon his return, Plaintiff PICHARDO told his managers Orlando [LNU] and Ramon [LNU], as well as Beatrice [LNU] about his need to continually take off to attend physical therapy sessions. Orlando [LNU] and Ramon [LNU], as well as Beatrice [LNU] initially approved of Plaintiff PICHARDO taking off to attend physical therapy sessions, but as the appointment days approached, Orlando [LNU] and Ramon [LNU], as well as Beatrice [LNU] would say he could not take off because they were short-staffed. As a result, Plaintiff missed these physical therapy sessions and his condition worsened.

64.     At all times, Plaintiff PICHARDO would give Orlando [LNU] and Ramon [LNU], as well as Beatrice [LNU] verbal notice that he needed to take the day off for therapy sessions. However, Orlando [LNU] and Ramon [LNU], as well as Beatrice [LNU] would threaten to fire Plaintiff PICHARDO saying, "You can't take off we are short-staffed on that day. If you want to take off don't bother coming back." On the days that Plaintiff PICHARDO informed Orlando [LNU] and Ramon [LNU], as well as Beatrice [LNU] he needed off, there would be no other employees to relieve Plaintiff PICHARDO when he needed to leave. Plaintiff PICHARDO was forced to continue working as he couldn't leave the deli department un-staffed. When he attempted to leave, he was told by Beatrice [LNU], "go back to the Deli, because your relief is on the cash register right now."

65.     As a result of Defendants not allowing Plaintiff PICHARDO to attend the physical therapy sessions, his condition has worsened. Plaintiff PICHARDO never went to any therapy sessions when he was employed by Defendants, even though he was instructed by his doctor to go three (3) to four (4) times a week.

66.     Furthermore, Defendants made Plaintiff PICHARDO work more than was agreed upon. Plaintiff PICHARDO was only supposed to work eight (8) hour shifts, but because they were understaffed Defendants made Plaintiff PICHARDO work up to twelve (12) hour shifts.

67.     Plaintiff PICHARDO was still receiving treatment for his injuries well into 2023. He attended a doctor's appointment on May 31, 2022, and was received an MRI and doctor's appointment in or around February 2023.

68.     Defendants violated the Family Medical Leave Act ("FMLA") when they threatened to terminated Plaintiff for asserting his right for leave to attend to his serious health condition. Plaintiff formally attempted to assert his rights under the FMLA but was denied by Defendants, including [NAME].

69.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

70.     Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

71.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

72.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

73.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

74.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half.

75.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all wages owed, including overtime, due to a policy of time shaving.

76.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

77.     Defendants knew of, and/or showed a willful disregard for, the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs all wages, including overtime, due when Defendants knew or should have known such was due.

78.     Defendants failed to properly apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

79.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

80.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums; unpaid wages, including overtime, due to time shaving; plus an equal amount as liquidated damages.

81.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**<u>VIOLATION OF NEW YORK LABOR LAW</u>**

82.     Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

83.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL §§ 2 and 651.

84.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours each workweek.

85.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them all wages owed, including overtime, through a policy of time shaving.

86.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) or more hours.

87.     Defendants knowingly and willfully failed to provide wage and hour notices to employees pursuant to the requirements of NYLL.

88.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements as required under NYLL.

89.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover unpaid overtime premiums; unpaid wages, including overtime, due to time shaving; unpaid spread of hours premiums; reasonable attorney's fees; liquidated damages; statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

90.     Plaintiffs repeat each and every previous allegation as if fully set forth herein.

91.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

92.     By failing to provide Plaintiff and Cash Subclass Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and Cash Subclass Members as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

93.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

94.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff and Cash Subclass Members for reasonable attorneys' fees.

## COUNT IV

## BREACH OF CONTRACT

95.     Plaintiff repeats each and every previous allegation as if fully set forth herein.

96.     "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

97.     When Plaintiff and Cash Subclass Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Cash Subclass Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

98.     Defendants breached this duty when they decided to pay Plaintiff and Cash Subclass Members in cash and not file proper W-2. As a result, Plaintiff and Cash Subclass

Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT V

## UNJUST ENRICHMENT

99.     Plaintiff repeats each and every previous allegation as if fully set forth herein.

100.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

101.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Cash Subclass Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

102.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Cash Subclass Members.

## COUNT VI

## INTERFERENCE AND RETALIATION UNDER THE
## FAMILY AND MEDICAL LEAVE ACT

103.    Plaintiff realleges and reavers all the foregoing paragraphs as if fully set forth herein.

104.    The FMLA states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period …. because of a serious health condition

that makes the employee unable to perform the functions of the position of such employee." 29 U.S. Code § 2612(a)(1)(D).

105.    The FMLA defines serious health condition as, "an illness, injury, impairment, or physical or mental condition that involves … continuing treatment by a health care provider. 29 U.S. Code § 2611(11).

106.    Section 2615(a) of the FMLA, states in pertinent part:

Interference with rights.

i.    Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

ii.    Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

107.    Defendants are subject to the FMLA as a covered employer. Defendants are a covered employer because they employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the year preceding their violation of Plaintiff PICHARDO's rights under the FMLA. Defendants have more than thirty (30) employees and therefore meet FMLA standards.

108.    Plaintiff PICHARDO is an eligible employee under the FMLA because he had worked at least 1,250 hours in the 12 months preceding her request for leave.

109.    Defendants interfered with Plaintiff PICHARDO's rights under the FMLA by threatening to terminate him because he wanted to take off to go to physical therapy sessions for a serious health condition.

110.    Plaintiff PICHARDO seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA, NYLL, and FMLA;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them prohibiting them from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime premiums due under the FLSA and NYLL;

d.  An award of unpaid wages, including overtime, due to Defendants' policy of time shaving under FLSA and NYLL;

e.  An award of unpaid "spread of hours" premium due under the NYLL;

f.  An award of unpaid call-in pay under NYLL;

g.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiffs' and Class Members' retirement through FICA contributions;

h.  Disgorgement from Defendants of all illegally retained sums that should have gone into FICA contributions;

i.  An award of statutory penalties as a result of Defendants' failure to comply with wage notice and wage statement requirements under NYLL;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

k. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, pursuant to NYLL;

l. All applicable compensatory and punitive damages under the FMLA;

m. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorney's and expert fees and statutory penalties;

n. Designation of Plaintiff as the Representative of FLSA Collective Plaintiffs;

o. Designation of this action as a class action pursuant to F.R.C.P. 23;

p. Designation of Plaintiff as Representative of the Class; and

q. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 12, 2024                    Respectfully submitted,

By:     _/s/ C.K. Lee_____
        C.K. Lee (CL 4086)

        **LEE LITIGATION GROUP, PLLC**
        C.K. Lee (CL 4086)
        Anne Seelig (AS 1976)
        148 West 24th Street, 8th Floor
        New York, NY 10011
        Tel.: 212-465-1188
        Fax: 212-465-1181
        *Attorneys for Plaintiff,*
        *FLSA Collective Plaintiffs,*
        *and the Class*